UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VIVIAN McGEE,

        Plaintiff,

Case Number: 06-10952

v.

JUDGE PAUL D. BORMAN

CITY OF ROYAL OAK, CITY OF
ROYAL OAK POLICE DEPARTMENT,
and JOHN DOES I-V,

        Defendants.
_____ /

## OPINION AND ORDER GRANTING DEFENDANT CITY OF ROYAL OAK'S MOTION FOR SUMMARY JUDGMENT (DOCK. NO. 23)

Now before the Court is Defendant City of Royal Oak's Motion for Summary Judgment. The Court held a motion hearing on June 14, 2007. Having considered the entire record, and for the reasons that follow, the Court GRANTS Defendant's Motion for Summary Judgement.

**I.  FACTS**

Plaintiff filed her Complaint on February 9, 2006 in Oakland County Circuit Court, alleging four counts[1] against Defendants City of Royal Oak (the "City"), the Royal Oak Police Department ("ROPD"), and John Does I-V. Defendants City of Royal Oak and the Royal Oak Police Department removed the case to federal court on March 2, 2006, claiming that Plaintiff alleged in part that she was deprived of her constitutional rights in violation of 42 U.S.C. § 1983.

---

[1]   Count I:      Elliott-Larson Civil Rights Act
    Count II:     False Imprisonment
    Count III:    Negligence
    Count IV:    Intentional Infliction of Emotional Distress

1

Plaintiff Vivian McGee ("Plaintiff") is an African-American female residing in Michigan. (Compl. ¶ 1). Defendant City of Royal Oak ("City") and Defendant Royal Oak Police Department (collectively "Defendants") are also located in Michigan. (Compl. ¶ 2).

Plaintiff was an employee of the Marshall Fields Department Store ("Marshall Fields"), located in the City of Westland. (Compl. ¶ 6). On June 8, 2005, Marshall Fields allegedly terminated Plaintiff without offering an explanation. (Compl. ¶ 7). Plaintiff received notice through the mail on June 12, 2005, that she was terminated from Marshall Fields because of felony criminal charges on her record, which were not disclosed on her job application. (Compl. ¶ 8).

On June 14, 2005, Plaintiff went to the City of Detroit Police Department Eighth Precinct to report that her identity had been illegally used. (Compl. ¶ 9). Officers at the Eighth Precinct notified Plaintiff that outstanding felony drug charges were pending against her from Wayne County. (Compl. ¶ 10). Detroit is one of multiple municipalities in Wayne County. Plaintiff informed the officers that she had never been arrested and that her sister had previously used her name in connection with traffic crimes, for which she received a "clearance" letter from the Detroit Police Department in 2002. (Compl. ¶ 11). The Eighth Precinct had provided Plaintiff with a "Letter of Clearance" dated June 14, 2005, which invalidated the warrant issued for her arrest. (Compl. ¶ 13). The Eighth Precinct officers instructed Plaintiff to take the "clearance" letter to the State of Michigan Police Department, where her name would be revised within their files. (Compl ¶ 14). On July 13, 2006, under the mistaken belief that she was entering into a State of Michigan Police Department facility, Plaintiff entered the ROPD. (Compl. ¶ 16). Plaintiff explained to the ROPD officers that she was trying to resolve the fact that her name had been falsely used in connection with a felony drug possession arrest. (Compl. ¶ 19). Plaintiff

2

allegedly informed the officers that she had received a police "clearance" letter from the Detroit Police Department's Eighth Precinct because her sister had used her name during a felony drug arrest. (Compl. ¶ 20). After verifying Plaintiff's identity, Plaintiff was placed under arrest. (Compl. ¶ 23). Plaintiff was told she was under arrest because of an outstanding felony warrant in the City of Detroit for felony drug possession. (Compl. ¶¶ 22, 23, 24). Plaintiff was also told that she was being taken into custody because they felt she was lying about her involvement in the crime for which the warrant was issued. (Compl. ¶ 24).

Plaintiff was placed in handcuffs and interrogated, allegedly without being apprised of her constitutional rights, for approximate two hours regarding the felony drug charges. (Compl. ¶ 25, Pl.'s Resp. 3). Plaintiff granted permission to Sergeant Clemens to search the passenger compartment of her vehicle in order to retrieved a file folder. (Pl.'s Br. 3). Sergeant Clemens allegedly found the folder contained the letters of "clearance" from May 20, 2002 and June 14, 2005.[2] (Compl. ¶¶ 26, 27). Plaintiff again attempted to explain that her identity had been used by her sister during a drug arrest. (Compl. ¶ 28). The detective informed Plaintiff that he did not believe her, but that he would attempt to verify her story. (Compl. ¶ 29). Plaintiff was placed in a jail cell where she remained for eight to ten hours. (*Id.*).

Sergeant Clemens contacted Wayne County Jail Booking in order to request a photograph of the individual who was arrested. (Defs.' Br. 3). However, a photograph was unavailable. Eventually, Plaintiff was released later that same evening, when the Automated Fingerprint Identification System indicated that Plaintiff was not the individual arrested in Detroit. (Defs.' Br. 3).

---

[2] Defendants claim that Sgt. Clemens was unable to find any documents showing that the warrant was invalid. (Def.'s Br. 2).

On August 18, 2006, the Court denied City's Motion to Dismiss. (Dock. No. 17). However, at that time the parties stipulated to the dismissal of the Royal Oak Police Department and Plaintiff's negligence claim against the City, to the extent that it alleges a violation of the state constitution. Plaintiff filed an First Amended Complaint on August 28, 2006 alleging Fourth and Fourteenth Amendment Violations, Eighth Amendment Violations, False Imprisonment, Gross Negligence, and Intentional Infliction of Emotional Distress. (Dock. No. 18).

The City filed the instant Motion for Summary Judgment on October 5, 2006. (Dock. No. 23).

## III. ANALYSIS

### A. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A "material" fact is one "that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A "genuine" issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In deciding a motion for summary judgment, the Court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.

4

**B.     Discussion**

**1.     Section 1983 Municipal Liability Claim**

A plaintiff can bring a claim under §1983 against a municipality when he or she is deprived "of any rights, privileges, or immunities secured by the Constitution and laws," as a result "of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. While a municipality may be held liable under § 1983 for a constitutional violation directly attributable to it, § 1983 does not impose vicarious liability on a municipality for the constitutional torts of its employees. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 692 (1978). As a result, in order for a plaintiff to state a claim against a city or a county under § 1983, the plaintiff must show that his injury was caused by an unconstitutional "policy" or "custom" of the municipality. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). The local government's policy or custom "must be the moving force of the constitutional violation" in order to establish liability under 24 U.S.C. § 1983. *Monell*, 436 U.S. at 694. For the plaintiff to demonstrate municipal liability, she "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003).

A "custom" is a "'legal institution' not memorialized by written law." *Doe v. Claiborne County*, 103 F.3d 495, 509 (6th Cir. 1996). A city's custom or policy can be unconstitutional in two ways: (1) facially unconstitutional as written or articulated; or (2) facially constitutional but consistently implemented to result in constitutional violations with explicit or implicit ratification by city policymakers. Where, the identified policy is itself facially lawful, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as

5

to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997) (internal citations omitted).

"For purposes of *Monell* liability, a practice must be so permanent and well settled as to constitute a custom or usage with the force of law." *Bible v. Village of Bancroft*, Case No. 05-CV-72034-DT, 2006 WL 847214, *5 (E.D. Mich. Mar. 20, 2006) (unpublished) (citing *Monell*, 436 U.S. at 691). In turn, the notion of 'law' must include 'deeply embedded traditional ways of carrying out state policy.'" *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 369 (1940).

The City argues that Plaintiff has not alleged a policy, practice, or custom of the City that caused Plaintiff's alleged injuries. Plaintiff responds that the *Monell* requirements are met by the allegations made within her Complaint. Plaintiff also points out that it is compelling evidence that the City of Detroit Police Department only questioned and briefly detained her to ascertain the necessary facts.

Plaintiff's argument is not convincing. Here, Plaintiff offers no evidence that the City of Royal Oak had a policy, practice, or custom, which only affected African-American people. Plaintiff's does not appear to present any evidence of a policy, practice or custom upon which the City violated her constitutional rights. Further, even if Plaintiff identified a custom or practice, Plaintiff has not connected the custom or policy to the City, nor has she provided evidence that her alleged injury was incurred because of the execution of that policy or custom. Plaintiff does not provide the Court with evidence that the practice of detaining an individual with a "Letter of Clearance" was permanent and well settled. Likewise, the record does not contain any evidence that the City's policy, practice or custom was the "moving force" behind

6

the acts committed. Plaintiff cannot rest on mere allegations.

Accordingly, the Court GRANTS the City's Motion for Summary Judgment on Plaintiff's § 1983 Municipal Liability claim.

**2.    State Law Claims**

a.    State Law False Imprisonment[3]

The Michigan Governmental Tort Liability Act provides governmental agencies immunity from tort liability. M.C.L. § 691.1407(1). "By the plain language of § 7, only tort claims brought pursuant to one of the five exceptions provided by the [Act] itself, and those that arise from the exercise or discharge of a non-governmental function, survive the grant of immunity." *Tate v. City of Grand Rapids*, 256 Mich. App. 656, 659 (2003). The management, operation and control of a police department is a governmental function under Michigan law. *Trezzi v. City of Detroit*, 120 Mich. App. 506 (1982). "The immunity granted by the statute to a municipality is based upon the general nature of the activity of its employees, rather than the specific conduct of its employees." *Payton v. City of Detroit*, 211 Mich. App. 375, 392 (1995). "Statutory exceptions to governmental immunity are to be narrowly construed." *Kerbersky v. Northern Mich. Univ.*, 458 Mich. 525, 529 (1998). There are six statutory exceptions to governmental immunity. Those exceptions are: (1) failure to maintain highways; (2) negligent operation of a government-owned vehicle; (3) ownership or operation of a governmental hospital; (4) performance of a proprietary function; (5) negligent failure to maintain or repair a public building; and (6) the sewage disposal system exception. *Grimes v. Mich. DOT*, 475 Mich.

---

[3] Plaintiff's original Complaint included a count alleging a violation of the Elliot-Larsen Civil Rights Act ("ELCRA") and in its motion, the City argues for summary judgment on that count. However, Plaintiff's Amended Complaint, dated August 28, 2006, does not include a ELCRA count and thus this Court will not address the issue.

72, 77, 77 n.16 (2006).

The City argues that Plaintiff failed to allege an exception to governmental immunity. The City claims that it was engaged in a governmental function, mainly the arrest and detention of Plaintiff. The City also contends that it is immune from vicarious liability, as the officers were performing a governmental function.

Plaintiff responds the initial arrest was a governmental function, but the continued false imprisonment of Plaintiff when she had an official "clearance" letter from the City of Detroit fell outside a governmental function. Plaintiff contends that the City is vicariously liable for the actions of its officers because its officers acted outside of their governmental function when they detain her once they knew she had a "clearance" letter.

Plaintiff's argument focuses on the fact that the officers were not acting within their governmental function once they knew that she was not the individual on the Wayne County warrant. In essence, Plaintiff is arguing that the "clearance" letter issued by the City of Detroit Police Department was enough for the ROPD officers to know that Plaintiff was not the individual wanted on the Wayne County warrant. Again, the Court notes that the city of Detroit is but one of the many cities within the County of Wayne.

Plaintiff's argument is not convincing. There was a Wayne County warrant out for Plaintiff's arrest and Plaintiff was detained in order for the ROPD officers to investigate the identity of the individual who committed the crime and compare that to Plaintiff's identity. Investigation of a crime, as a general activity, is a governmental function. "There are few functions more clearly governmental in nature than the arrest, detention and prosecution of persons suspected of having committed a crime and the decision involved in determining which suspect should be prosecuted and which should be released. *Payton*, 211 Mich. App. at 392.

8

Further, the "immunity granted by the statute to a municipality is based upon the general nature of the activity of its employees, rather than the specific conduct of its employees." *Id*. The focus is not on the specific conduct involved at the time the alleged tort occurred. *See Smith*, 428 Mich. at 608.

Even if the Court were to focus on the specific actions of the officers, Plaintiff was only detained until her story could be verified. The police officers' attempted to obtain a mug shot in order to verify the veracity of Plaintiff's claim. A mug shot could not be located. Once the police officers received fingerprint information confirming that Plaintiff was not the individual arrested, she was immediately released.

Thus, the Court finds that the officers were engaged in a governmental function when they attempted to corroborate Plaintiff's explanation by requesting a photograph and fingerprints of the individual arrested.

"Even if the officers were not engaged in the exercise of a governmental function within the scope of their employment, the city is nonetheless entitled to immunity because it cannot be held liable for the intentional torts of its employees." Payton, 211 Mich. App. at 393. "A city cannot be held vicariously liable for torts of its police officers committed during the course of an arrest because the officers were engaged in police activity[;] a governmental function. *Ross v. Consumers Power Co.*, 420 Mich. 567, 625 (1985). Thus, the Court holds that the City is not vicariously liable for the acts of the ROPD officers.

Accordingly, the Court GRANTS the City's Motion for Summary Judgment on Plaintiff's state law false imprisonment claim.

### b. Intentional Inflictions of Emotional Distress

The City argues that the threshold for showing extreme and outrageous conduct is high.

It contends that during the eight to ten hours Plaintiff was in the holding cell, they investigated her claim that she was not the individual sought in the warrant, but had to rely on other agencies to provide them with information. The City asserts that they were not responsible for any delay in comparing photographs and fingerprints.

Plaintiff responds that it was extreme and outrageous conduct to dismiss an official "clearance" letter. Plaintiff avers that disregarding the letter was intentional or reckless. Plaintiff contends that she suffered severe emotion distress as she waited for fingerprints, which normally can be returned in a hour.

The elements of IIED are: (1) extreme or outrageous conduct, (2) which intentionally or recklessly, (3) causes (4) extreme emotional distress. *Grochowalski v. Detroit Inter-Insurance Exchange*, 171 Mich. App. 771, 775 (1988). "Extreme or outrageous conduct has further been defined as conduct so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community." *Id*. at 776 (citing 1 Restatement Torts, 2d, § 46, Comment d).

The Court finds that the officers' action of placing Plaintiff in a holding cell for eight to ten hours while they investigated her outstanding warrant was not outrageous or extreme conduct. In a light most favorable to Plaintiff, Defendants' actions do not rise to the level of conduct considered beyond decency. Thus, there is no genuine issue of material fact. Accordingly, the Court GRANTS the City's Motion for Summary Judgment on Plaintiff's IIED claim.

## III.  CONCLUSION[4]

---

[4] Defendant did not move for summary judgment on Plaintiff's Gross Negligence claim (Count IV). However, a municipality cannot be liable for gross negligence under § 1983. "A

10

For the reasons stated, the Court GRANTS Defendants' Motion for Summary Judgment.

**SO ORDERED.**

                                              s/Paul D. Borman
                                              PAUL D. BORMAN
                                              UNITED STATES DISTRICT JUDGE

Dated: July 5, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on July 5, 2007.

                                              s/Denise Goodine
                                              Case Manager

---

policy or custom may be inferred from acts or omissions of a municipality's supervisory officials serious enough to amount to gross negligence or deliberate indifference to the constitutional rights of the plaintiff. Negligence is not a sufficient basis for imposing liability upon a municipality under § 1983." *Payton*, 211 Mich. App. at 244. Mere negligence will not amount to deliberate indifference. *York v. Detroit*, 438 Mich. 744, 757 (1991). "Deliberate indifference of the municipality is required." *Payton*, 211 Mich. App. at 244.